# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

RSR Electric, LLC,             :
         Petitioner        :
                               :
         v.                :    No. 1064 C.D. 2024
                               :
Unemployment Compensation    :
Board of Review,                :
         Respondent    :    Submitted: October 7, 2025


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MATTHEW S. WOLF, Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                              FILED: November 18, 2025

       RSR Electric, LLC (Employer) petitions this Court for review of an order of the Unemployment Compensation Board of Review (Board), which reversed a determination by Referee Melissa Shiel and found Kayne Elliot (Claimant) eligible for unemployment compensation (UC) benefits. Employer argues that Claimant was ineligible for UC benefits because he was properly discharged for willful misconduct, and that the Board relied on inadequate evidence in reaching a contrary conclusion. Because the Board's factual determinations have adequate support in the record, we affirm.

## I. Background

       Claimant began working for Employer, an electrical system installer, as a full-time electrician apprentice on April 3, 2023. Employer's Br., Ex. B, Board Op., Finding of Fact (F.F.) No. 2. On October 24, 2023, Employer terminated Claimant's

employment "for leaving work early [on] October 20, 2023[,]" and for "failure to report to work or call to report his absence" on that day or on the following day. *Id.*, F.F. Nos. 7-10. Claimant applied for UC benefits on the day of his dismissal, citing absenteeism or tardiness as the reason for his separation from employment. Certified Record (C.R.) at 15.

Following a service center determination that Claimant did qualify for UC benefits, Employer appealed and was granted a hearing before Referee Shiel. *Id.* at 75. Claimant, an unrepresented litigant, presented his own testimony during a February 26, 2024 telephone hearing, while Employer presented the testimony of Melissa Martin, a human resources manager.

## A. Claimant's Testimony

On Friday, October 20, 2023, Claimant served a full-day shift at a worksite. *Id.* at 127. Because of a "power shutoff," Claimant and his coworkers were instructed to return to work at 6:00 p.m. for "a couple of hours." *Id.* As tasks continued to pile up, however, Claimant was still at work after 9:00 p.m.; meanwhile, some of his coworkers were "starting to rip up asbestos" in the room where the work occurred. *Id.* Sensing that the work was being rushed through to an unsafe degree, Claimant informed a coworker, Miguel Santiago, that he needed to go home. *Id.* at 127-28. Mr. Santiago, Claimant explained, was the temporary supervisor on duty while his regular supervisor was out on vacation. *Id.* Claimant also informed Mr. Santiago that he would not be coming in the following morning for a previously scheduled overtime shift, citing his concerns about asbestos. *Id.* at 129. Mr. Santiago informed Claimant that the workers still on site could "handle the rest of the work and that [Claimant] was okay to leave." *Id.* at 133. Because of their conversation, Claimant did not find it necessary to inform anyone else of his planned

2

absence from the next morning's overtime shift.  *Id.* at 130.  On the morning of Monday, October 24, 2023, Claimant was informed that his employment was terminated due to a "no-call, no-show" on Saturday, October 21, 2023.  *Id.* at 126-27.

## B.  Ms. Martin's Testimony

Ms. Martin identified herself as a "human resources generalist" for the Viocity Group, an independent company that provides Employer with human resources services.  *Id.* at 118.  In that position, Ms. Martin was tasked with the discipline and discharge of Employer's workers.  *Id.*  On the morning of October 24, 2023, she received an e-mail message from an Employer manager explaining that Claimant "had left the jobsite early without notifying anybody" on October 20, 2023, and was a "no-call, no-show" for his overtime shift the next morning.  *Id.* at 119.  Ms. Martin acknowledged later in her testimony that Claimant did inform Mr. Santiago of his intentions at the worksite on the evening of October 20, 2023, but maintained that his actions, which she deemed "negative behavior," did not constitute a proper request for time off.  *Id.* at 123.

After receiving the manager's e-mail message, Ms. Martin held a meeting later that day with Claimant and two managers "to go over what, if anything, may have caused him to have been displaying that behavior."  *Id.* at 120, 122.  Since "[t]here was no valid reason given," Ms. Martin decided to terminate Claimant's employment.  *Id.* at 120.  As justification, Ms. Martin pointed to Employer's employment handbook, which explains what employees are to do when they request time off, including making phone calls in advance and waiting for the request to be

granted. *Id.*; *see also id.* at 137-40.[1] The handbook also warns employees of the consequences of failing to show up for work without being granted time off. *Id.* Ms. Martin further noted that Claimant had signed an acknowledgement that he received and reviewed the handbook and its policies. *Id.* When presented with the termination notice, Claimant objected that the presence of asbestos at the worksite should be sufficient justification for leaving early. *Id.* at 124. Ms. Martin declined to reverse her termination of Claimant's employment on that basis, explaining that he failed to mention it when asked to explain his "no-call, no-show." *Id.* at 123-24. In addition, Ms. Martin noted that she looked into the allegation that Claimant and other workers were being exposed to asbestos on the worksite and found no evidence that asbestos was present.[2]

## C. Referee Shiel's Decision

In a March 18, 2024 decision, Referee Shiel reversed the service center's determination and ruled that Claimant was ineligible for UC benefits. *Id.* at 150. Referee Shiel explained that Claimant's absence from work on October 21, 2023, was a "no-call, no-show," as Claimant had failed to notify management of his intent not to work that day despite being previously scheduled. *Id.* at 148. Since Claimant

---

[1] The pages from the employment handbook submitted as evidence by Employer include the following statement:

> **The following offense will result in immediate termination:**
>
> Job abandonment. Two (2) consecutive "[no-call, no-shows]" (i.e.[,] not calling in at all[)] will result in immediate termination[] subject to protections afforded by state or federal law.

C.R. at 140 (emphasis in original).

[2] Asked near the conclusion of his testimony about Ms. Martin's conclusion that no asbestos was present at the worksite, Claimant contended that he knew what asbestos looked like from his prior work experience in the demolition business, and maintained that there was black mastic asbestos being pulled up from under the flooring at the worksite. *Id.* at 130-31.

4

was aware that his absence on that morning was unauthorized, Referee Shiel found that his actions constituted willful misconduct under Section 402(e) of the UC Law.[3] *Id.* Referee Shiel thus determined that Employer had met its burden of proving that Claimant's "discharge from employment was for reasons which rise to the level of willful misconduct." *Id.*

## D. The Board's Decision

Claimant appealed to the Board on April 4, 2024. *See id.* at 160. In a July 25, 2024 order, the Board reversed Referee Shiel's decision and found Claimant eligible for UC benefits. *Id.* at 174. The Board acknowledged that courts have consistently held "absences without permission and without good cause" to be willful misconduct, and that even absences *with* good cause may constitute willful misconduct if the employer requires notice "and the failure to provide notice is without good cause." *Id.* at 173. The fear of injury, the Board further noted, has been recognized as good cause for work absences. *Id.* In this case, the Board found Claimant to have "credibly testified that he left the job site around 9:30 p.m. on October 20, 2023[,] only after asking the person he reasonably believed to be the onsite supervisor for permission." *Id.*

Addressing the reasons proffered for Claimant's absence, the Board also found Claimant to have "credibly testified that, based on years of work in demolition, he did not want to unnecessarily expose himself to what he reasonably believed was black mastic asbestos at the job site." *Id.* at 174. Thus, the Board reasoned, Claimant had established good cause for deviating from Employer's time-off policy and successfully "rebutted Employer's claim of willful misconduct." *Id.* at 174. Even if Claimant had not shown good cause for his absence, the Board

---

[3] Act of December 5, 1936, 2nd Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

5

further noted that Employer's handbook only warned Claimant of dismissal for two consecutive "no-call, no-show" occurrences, and that Claimant had only failed to show up for his shift on one occasion.

This appeal followed.[4]

## II. Discussion

At the outset, we note that the Board's factual findings "are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *Gosner v. Unemployment Comp. Bd. of Rev.*, 234 A.3d 934, 937 (Pa. Cmwlth. 2020). In other words, its findings must be supported by such relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *Id.* This Court is bound "to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony to determine if substantial evidence exists for the Board's findings." *US Banknote Co. v. Unemployment Comp. Bd. of Rev.*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990) (cleaned up).

Instantly, Employer maintains that Claimant committed willful misconduct pursuant to Section 402(e) of the UC Law, 43 P.S. § 802(e). While the UC Law does not define the term, this Court has characterized willful misconduct as:

> (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of an employer's rules; (3) disregard of the standards of behavior that an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations.

---

[4] This Court's review of a Board decision is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. *Miller v. Unemployment Comp. Bd. of Rev.*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014).

6

*Zimmerman v. Unemployment Comp. Bd. of Rev.*, 236 A.3d 151, 159 (Pa. Cmwlth. 2020). Employer explains that the burden of proof of willful misconduct is met with a showing of "the following elements: the existence of a work rule, the reasonableness of the rule, the claimant's knowledge of the rule, and the claimant's subsequent violation of the rule." Employer's Br. at 22 (citing *Bowen v. Unemployment Comp. Bd. of Rev.*, 311 A.3d 641, 645-46 (Pa. Cmwlth. 2024)). Since Employer demonstrated below that "Claimant exhibited willful misconduct in the form of a deliberate violation of [Employer's] rules by showing that there was a workplace policy in place, that Claimant was aware of such policy, that the policy was reasonable, and that Claimant had violated the policy without good cause," Employer argues that the Board "disregarded . . . a clear showing of willful misconduct." *Id.* at 23.

Employer's arguments are unavailing. As the Board explained, Claimant testified credibly that he informed Mr. Santiago—whom Claimant reasonably identified as his supervisor—of his intent to go home on the evening of October 20, 2023, and not to come in for his overtime shift on the following morning. The Board also credited Claimant's testimony that he raised concerns about working in the presence of asbestos that evening, which was sufficient to establish good cause for failing to follow Employer's protocol for requesting time off. This Court has consistently held that a claimant establishes good cause with a showing that his actions were based on "a reasonable belief that the work assignment would place him in danger of . . . bodily harm." *Gwin v. Unemployment Comp. Bd. of Rev.*, 427 A.2d 295, 298 (Pa. Cmwlth. 1981); *see also Eckenrode v. Unemployment Comp. Bd. of Rev.*, 533 A.2d 833, 836 (Pa. Cmwlth. 1987) (explaining that a claimant's "subjective fear" must be both "substantial" and "reasonable" to establish good

7

cause). By contrast, Employer's only fact witness, Ms. Martin, was not present at the worksite that evening, was only made aware of those events through secondhand accounts relayed to her on the following Monday morning, and could only offer hearsay testimony on those events to Referee Shiel. Thus, the Board's finding that Claimant met his burden of proving good cause is firmly supported by the record.

Lastly, we note the Board's finding that Claimant's dismissal was not even consistent with Employer's own rules. In support, the Board cited the employment handbook that Employer submitted as evidence, which provided that two consecutive no-call, no-show incidents would result in "immediate termination." C.R. at 140. Before this Court, Employer fails to account for its apparent deviation from its own rules in terminating Claimant's employment. Accordingly, even if Employer established a no-call, no-show circumstance, the record supports the Board's conclusion that termination would not even be justified under that circumstance pursuant to the company's own policy.

### III. Conclusion

For the foregoing reasons, we affirm the Board's order.

 

_____
MATTHEW S. WOLF, Judge

 

Judge Fizzano Cannon did not participate in the decision in this matter.

8

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

RSR Electric, LLC, :
                   Petitioner :
                                :
            v. : No. 1064 C.D. 2024
                                :
Unemployment Compensation :
Board of Review, :
                   Respondent :

# **O R D E R**

AND NOW, this 18th day of November 2025, the order of the Unemployment Compensation Board of Review in the above-captioned matter, dated July 25, 2024, is hereby AFFIRMED.

_____
MATTHEW S. WOLF, Judge